UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUNDERBIRD RESORTS, INC., a British Virgin Isles Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MURRAY JO ZIMMER, an individual; ANGULAR INVESTMENTS CORPORATION, a Panama corporation; MITZIM PROPERTIES, INC., a Nevada corporation; and TALOMA ZULU, S.A., a Panamanian corporation; JACK RAY MITCHELL, an individual,<br><br>Defendants. | Case No.: 15cv1304-JAH (BGS)<br><br>**ORDER:**<br><br>**1. GRANTING DEFENDANT ANGULAR INVESTMENTS CORPORATION'S MOTION TO SET ASIDE ENTRY OF DEFAULT [DOC. NO. 70]; and**<br><br>**2. SETTING A HEARING DATE ON DEFENDANT ANGULAR INVESTMENTS CORPORATION'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2),(6), (7) [DOC. NO. 80]** |

## **INTRODUCTION**

This matter comes before the Court on two motions by Defendant Angular Investments Corporation: (1) a motion to set aside default and default judgment, if any [Doc. No. 79]; and (2) a motion to dismiss Pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 12(b)(2),(6), and (7) for lack of jurisdiction, failure to state a claim, and failure to join a party [Doc. No. 80]. After a careful review of the parties' submissions, and for the reasons set forth below, Defendant's Motion to Set Aside Default is GRANTED and a hearing date SET on Defendant's Motion to Dismiss for Lack of Jurisdiction.

1

# BACKGROUND

## I. FACTUAL BACKGROUND

This matter arises from the international business dealings of two foreign corporations. In 2002, Plaintiff Thunderbird Resorts Inc., a British Virgin Isles corporation ("Plaintiff" or "Thunderbird") partnered with Defendant Angular Investments Corporation, a Panamanian corporation ("Defendant" or Angular"), forming Grupo Thunderbird de Costa Rica, S.A. ("GTCR") to operate casinos and related businesses in Costa Rica. *Doc. No. 28 at 4-5*. Murray Jo Zimmer ("Zimmer"), controlled and operated the business activities of Angular, oversaw the day-to-day operations of the partnership as president of GTCR, and acted as the "country manager" for Plaintiff's operations in Costa Rica. Plaintiff and Defendant Angular agreed to split GTCR's profits equally. *Id*. However, Plaintiff alleges that between July 2007 and September 2014, Defendant Angular, by and through co-defendant Zimmer convinced Plaintiff to authorize GTCR to pay over $2 million to co-defendant Taloma Zulu, a Panamanian corporation ("TZ"), under false pretenses. *Id*. Defendant Zimmer advised Plaintiff the payments were for legal and consulting fees and Plaintiff alleges it approved distribution of the fees on this basis. *Id*. Instead, the funds were paid back to Zimmer, co-defendant Mitzim Properties, Inc ("Mitzim") [1], which has its principal place of business in California, and others, without Plaintiff's knowledge. In 2015, Plaintiff discovered that over $550,000 of the funds GTCR paid to Defendant TZ were redirected to Defendant Zimmer in a matter of days. *Id*.

## II. PROCEDURAL BACKGROUND

On June 12, 2015, Plaintiff filed a Complaint against Defendants Zimmer, Angular, Mitzim and TZ alleging seven causes of action including breach of fiduciary duty and fraud, a civil RICO claim under 18 U.S.C. § 1961, et seq against all defendants, a state tort action for conversion and equitable claims for constructive trust and accounting. *Doc. No.*

---

[1] In 2010, Mitzim Properties, Inc. was registered as a Nevada Corporation listing its President as Jack R. Mitchell and Director as Murray J. Zimmer.

2

*1.* Proof of service, as to Defendant Mitzim was returned executed on July 2, 2015. See *Doc. No. 4.* On July 13, 2015, Defendant Mitzim answered the Complaint. See *Doc. No. 8.*

On September 11, 2015, Plaintiff filed its FAC adding an eighth claim for Breach of Contract and joining Defendant Jack R. Mitchell, the former CEO of Thunderbird and Zimmer's partner in Mitzim Properties. See *Doc. No. 28.* On December 31, 2015, Plaintiff moved for issuance of Letters Rogatory, as to Defendants Angular and TZ. See *Doc. Nos. 45, 46.* This Court granted Plaintiff's motions on March 15, 2016, [doc. nos. 54, 55], and requests for international judicial assistance were sent to the appropriate judicial authorities of the Republic of Panama ("Panama"). See *Doc. Nos. 54, 55.*

On December 19, 2016, Plaintiff filed proof of service via Letters Rogatory, asserting that service was effected on Angular Investments Corporation's registered agent for service of process on or about August 18, 2016, in accordance with Fed.R.Civ.P. 4(f)(1) and 4(h)(2) and the Inter-American Convention on Letters Rogatory and Additional Protocol. *Doc. No. 63.*

On December 30, 2016, Plaintiff filed a request for entry of Clerk default against Defendant Angular. See Doc. Nos. 65. The Clerk of Court entered default against Angular on January 03, 2017. *Doc. No. 67.*

On January 27, 2017, Plaintiff filed a motion for default judgment against Angular. *Doc. No. 69.* The motion went unopposed. This Court held a hearing on Plaintiff's motion. *Doc. No. 74.* Attorney David H. Lichtenstein appeared on behalf of Thunderbird. *Doc. No. 73.* Defendant Angular did not appear. *Id.* On the same date, March 20, 2017, the Court issued a minute order granting Plaintiff's motion for default judgment against Angular and directing Plaintiff to supplement the pleadings regarding damages above "$657,975 [sic][2]…" *Doc. No. 74.*

---

[2] With respect to the damages sought by Plaintiff—$1,021,372.50—the Court found that a sufficient showing was made only as to $675,975.00. The Court then ordered Plaintiff to supplement its pleadings to clarify or explain the damages it has suffered over and above the $675,975.00 amount.

3

On April 6, 2017, Plaintiff timely filed its supplemental brief on damages. *Doc. No. 75*. On May 4, 2017, Defendant Angular appeared and filed a motion to set aside entry of default and default judgment, if any. *Doc. Nos. 79, 80*. Defendant also incorporated by reference and filed concurrently a motion to dismiss the FAC pursuant to Fed.R.Civ.P. 12(b)(2), (6), and (7). On the same date, Defendant Angular filed a disclosure statement and notice of party with financial interest, pursuant to Fed.R.Civ.P. 7.1 and CivLR 40.2. *Doc. No. 81*. Defendant Angular's fully briefed motions are now before the Court.

## DISCUSSION

### I. LEGAL STANDARD

Under Fed.R.Civ.P. 4(k), "[s]erving a summons... establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located…." California's long arm statute extends personal jurisdiction to the limit allowed by the Due Process Clause of the federal Constitution. *Cal. Civ. Proc. Code* § 410.10; *Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797, 800-801 (9th Cir. 2004). Additionally, under the federal long-arm statute, federal courts are permitted "to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole." *Getz v. Boeing Co.,* 654 F.3d 852, 858 (9th Cir. 2011) (citing Rule 4(k)(2), Fed.R.Civ.P.). However, due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. In circumstances where a defendant's contacts with a state "are so 'substantial' or 'continuous and systematic' as to render [it] essentially at home in the forum State," general jurisdiction may be exercised. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Activity by the defendant need not physically take place in the forum state so as to constitute sufficient contact under the due process test .... The Supreme Court has consistently rejected the notion that absence of physical contacts with a forum state can defeat personal jurisdiction, '[s]o long as a commercial actor's efforts are purposefully directed toward residents of

4

another State.' " *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th Cir.1986) citing *Burger King*, 471 U.S. at 475-477. In tort cases, "the purposeful direction or availment requirement for specific jurisdiction is analyzed under the 'effects' test". *Dole*, 303 F.3d at 1111 (citing *Calder v. Jones*, 465 U.S. 783 (1984). A court may exercise specific jurisdiction over a defendant where: (1) the defendant has intentionally acted and purposefully directed his or her activities at the forum state itself *or* residents of the forum state; (2) the plaintiff's claim arises out of or relates to those activities; (3) defendant's acts cause harm that the defendant knows is likely to be suffered in the forum state and (4) the assertion of personal jurisdiction is reasonable and fair. *Id.*; *Schwarzenegger*, 374 F.3d at 802; see also *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

The overriding constitutional principle is that maintenance of an action in the forum must not offend "traditional conception[s] of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). Each defendant's connection with the forum state must be independently assessed to determine jurisdiction. *Calder,* 465 U.S. at 790.

Even where personal jurisdiction is determined to be appropriate, "[a] federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with *Fed.R.Civ.P. 4* (citations omitted)." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009). "So long as a party receives sufficient notice of the complaint, Rule 4 is to be liberally construed to uphold service. However, neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4." (Citations and quotes omitted). *Id*. When serving a corporation outside of the United States, service must comport with an internationally agreed upon means, if any, that is reasonably calculated to give notice. *See Fed.R.Civ.P. 4(h)(2); 4(f)(1)*. Unless waived, proof of service must be provided to the court according to the applicable treaty or convention. *Fed.R.Civ.P. 4(l)(2)(A)*.

If sufficient notice is provided, failure to make a timely answer or otherwise defend will justify entry of default. *Fed.R.Civ.P.* 55(a). Rule 55(c) of the Federal Rules of Civil Procedure permits a federal court to "set aside an entry of default for good cause, and … set aside a final default judgment under Rule 60(b)." Although the requisites for setting aside an entry of default under Rule 55(c) are less rigorous than those for setting aside a judgment, the Court should consider the factors in *Falk v. Allen, 739 F.2d 461 (9th Cir.1984. Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004); *See also Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir.1986). These factors include: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Brandt v. Am. Bankers Ins. Co. of Fla*., 653 F.3d 1108, 1111 (9th Cir.2011) (quoting *Falk*, 739 F.2d at 463). The Court is free to deny relief on any of these three bases. *Id*. (quoting *Franchise Holding II*, 375 F.3d at 926). However, it need not deny relief based solely upon a finding of defendant's culpability, when a meritorious defense is presented and prejudice to the Plaintiff can be cured. *See Brandt,* 653 F.3d at 1111. The party moving to set aside default has the burden of proving that it is entitled to relief. *Id*. "Where timely relief is sought from a default ... and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt*., 783 F.2d 941, 945-46 (9th Cir. 1986) (quoting *Schwab v. Bullock's Inc*., 508 F.2d 353, 355 (9th Cir. 1974)).

## II. ANALYSIS

### A. Motion to Set Aside Default and any Default Judgment

Angular moves to set aside default and default judgment, if any, pursuant to Fed.R.Civ.P. 55(c), or alternatively, Rule 60(b). Filed concurrently, and incorporated by reference in its motion to set aside default, Angular asserts four defenses in a motion to dismiss. Angular moves to dismiss Plaintiff's FAC on the grounds that: (1) this Court lacks personal jurisdiction (*Fed.R.Civ.P. 12(b)(2))*; (2) Plaintiff lacks standing to pursue the

6

claims asserted, (3) the FAC fails to join a party under Rule 19 (*Fed.R.Civ.P. 12(b)(7))*), and (4) Plaintiff fails to state a claim against Angular upon which relief may be granted (*Fed.R.Civ.P. 12(b)(6)*)).

As a preliminary matter, the parties disagree as to whether a "final judgment" has been entered and therefore differ regarding which standard governs this Court's determination. At the conclusion of the hearing on Plaintiff's motion for Default judgment, this Court advised Plaintiff it "may present a proposed default judgment. [The Court] will issue the default judgment, but [ ] will issue [an order regarding] damages in an amended judgment thereafter." The Court further explained, "[a]s to [Angular and Zimmer], the default judgment will be entered, but [the Court] need[s] [a]… clear explanation as to the amount of damages as to these two defendants." Although the Court granted Plaintiff's motion for default judgment, the order entered by the Court against defendants Angular and Zimmer was not a final default judgment, as it provided neither relief nor damages. *See Anheuser Busch, Inc. v. Philpot,* 317 F.3d 1264, 1267 (11th Cir. 2003). Further, a 2015 Amendment to the Advisory Committee Notes of Rule 55 states in pertinent part:

> A default judgment that does not dispose of all of the claims among all parties is not a final judgment unless the court directs entry of final judgment under Rule 54(b). Until final judgment is entered, Rule 54(b) allows revision of the default judgment at any time. The demanding standards set by Rule 60(b) apply only in seeking relief from a final judgment.

28 U.S.C.A., FRCP Rule 55, 2015 Amendment. Accordingly, Rule 55(c) governs and the Court need only find good cause exists to set aside default.

> The different treatment of default entry and judgment by Rule 55(c) frees a court considering a motion to set aside a default entry from the restraint of Rule 60(b) and entrusts determination to the discretion of the court. As a practical matter, however, when considering a motion to set aside a default entry, the parallels between granting relief from a default entry and a default judgment encourage utilizing the list of grounds for relief provided in Rule 60(b), including considering whether a defendant has a meritorious defense. These Rule 60(b) grounds are liberally interpreted when used on a motion for relief from an entry of default. The underlying concern, however, is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default. (Citations omitted)

7

*Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). The Court considers each of the *Falk* factors to determine whether Angular has met its burden of proving that it is entitled to relief. *Brandt*, 653 F.3d at 1111 (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

### B. *Falk* Factors

#### 1. Danger of Prejudice to Plaintiff

"To be prejudicial, the setting aside of [entry of default] must result in greater harm than simply delaying resolution of the case." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). The harm must be actual, such as "loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* (quoting *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)). Plaintiff contends that prejudice in the form of prolonged litigation and increasing cost will result if Angular's motion is granted. *Doc. No. 85 at 5, 12-14*. In response, Angular points out that "no depositions have been noticed much less taken by any party in this case, and the only discovery conducted so far has been limited to the initial disclosures required by Rule 26 and some limited written discovery between Plaintiff and Defendant Mitzim Properties." *Id.*

A review of the record indicates that co-defendant Zimmer was recently served with the summons and complaint and has filed his first pleading in the action. Although Plaintiff will suffer some prejudice in the form of added discovery and litigation costs if this Court grants the instant motion, setting aside Defendant Angular's default will not prolong litigation any more than Plaintiff's recent service of process to Zimmer, around whom the entire action revolves. Further, any such prejudice to Plaintiff may be cured by shifting costs if deemed appropriate.

#### 2. Meritorious Defense

Defendant Angular asserts it is entitled to relief based on several defenses presented in its motion to dismiss. First, Angular contends that (1) Plaintiff is not the real party in interest and therefore lacks standing, (2) GTCR, as the real party in interest, must ratify,

8

join or be substituted into this case (3) this Court lacks personal jurisdiction to enter Angular's default or render any judgment against it because Angular was never properly served. Even assuming proper service, Angular has no operations or business connection with the Unites States generally or with the State of California specifically. Last, Angular asserts that it played no role in the alleged improper diversion of money from GTCR.

### a. Thunderbird's Standing and GTCR's Interest

Angular contends that Thunderbird lacks standing to sue because GTCR - not Thunderbird - is the real party in interest. Angular notes that "the gravamen of Plaintiff's claims is that money was diverted from GTCR, of which Plaintiff Thunderbird and Defendant Angular each owned a 50% interest." Thus, Angular argues, Thunderbird was merely a shareholder of GTCR, not the company from which the funds were allegedly diverted, and therefore lacks standing to sue. In opposition, Plaintiff maintains that Angular's position is grounded in the erroneous assumption that Thunderbird's claims should have been brought as derivative claims in the name of the partnership. Plaintiff relies on *Schuster v. Gardner*, to assert that when the relationship between the parties is intimate and the function and structure of the partnership is sufficiently distinct from that of a corporate model, certain claims may appropriately be brought as direct claims to enable the injured party to recover while preventing a windfall to individuals or entities whose interests were not injured. *Cal.App.4th 305, 317 (Cal. App. 2005).*

Federal Civil Procedure Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest[.]" *Fed. R. Civ. P. 17(a)(1)*. A "real party in interest" is "any party to whom the relevant substantive law grants a cause of action." *U–Haul International, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986).

> In determining whether a claim is derivative or direct, "[a] court should look to the nature of the wrong and to whom the relief should go." *Tooley v. Donaldson, Lufkin & Jenrett*e, 845 A.2d 1031, 1039 (Del. 2004). A direct lawsuit is proper where the plaintiff is directly injured by the defendant's conduct. In other words, a suit to recover damages to an [entity] must be brought in that [entity's] name.

*Zachman v. Wells Fargo N.A.,* No. 315CV02909BENJMA, 2017 WL 3314229, at *3 (S.D. Cal. Aug. 1, 2017).

Defendant raises a material issue as to whether Plaintiff was "directly" injured by the alleged conduct of Zimmer or "indirectly" injured as a result of its relationship with GTCR. Defendant's defense that Plaintiff lacks standing to sue is not meritless and weighs in favor of granting relief.

### b. Service of Process

Alternatively, Angular asserts that this Court did not have jurisdiction to enter Angular's default or render any judgment against it because Angular was never properly served under the Inter-American Convention on Letters Rogatory, requiring personal service on Angular's authorized agent. In support, Angular points to an alleged defect on the face of the return which explicitly states that "the Notice was not served", and submits the notarized affidavit of Panamanian attorney Ms. Marisol Tamara Ellis, of Icaza, Gonzalez-Ruiz & Aleman ("IGRA"). Ms. Ellis, referencing Article 1004 and 1027 of the Panamanian Judicial Code, opines that Angular was not personally served in compliance with Panamanian Procedural law and therefore "null and lacks any legal value." *Doc. No. 79-1 at 4*; *Doc. No. 79-2, Ex. B-C*.

In opposition, Plaintiff argues the returned proof of service filed with this Court, constitutes *prima facie* evidence of proper service on Angular. The Court turns to the proof of service submitted by Plaintiff consisting of 326 pages in total, Article 4 of the Additional Protocol to the Inter-American Convention on Letters Rogatory, entitled "Transmission and Processing Of Letters Rogatory" and the Panamanian Judicial Code.

Article 4 of the Additional Protocol to the Inter-American Convention on Letters Rogatory states in pertinent part:

> Upon receipt of a letter rogatory… the Central Authority in the State of destination shall transmit the letter rogatory to the appropriate judicial or administrative authority for processing in accordance with the applicable local law. Upon execution of the letter rogatory, the judicial or administrative authority or authorities that processed it shall attest to the execution thereof in the manner prescribed in their local law, and shall transmit it with the relevant documents to the Central Authority.

The local law is set forth in the Panamanian Judicial Code. In general, Article 1001 states:

> Notifications to the parties must always be made by means of edict, except in the cases that are later expressed. The edict will contain the expression of the process in which the notification is to be made, the date and the operative part of the ruling, order or sentence that must be notified. The edict will be set the day after the decision is issued by the judge and its fixation will last five days….

Article 1002 identifies when personal service is required, but specifies that in the case of defendants or third parties, personal notification may also be "supplied with their representatives" or attorneys-in-fact. Article 1004 outlines the process for personal service, which requires a signature by the person served or by a witness on his behalf, and by the Secretary. In all cases of personal notification, a copy of the resolution to be notified is provided.

However, Article 1009 provides an alternative process for service when the person to be personally notified is not in the office or when a person in the office is uncooperative. Article 1009 states:

> If the proxy that was to be personally notified was not found in the office… or place designated by him during business hours, the edict that must be noticed relating to the resolution shall be posted and record of said fixation in the file. The documents that must be delivered immediately, will be delivered to the person who is in said office, who must identify himself to the official that requires it. Five days after such fixation, the notification is made and it has effects as if it had been done personally.
>
> In case you cannot enter the office, the edict will be posted on the door and the documents that need to be delivered in the act of notification shall be made available to the party in the secretary of the court, a circumstance that will be recorded in the edict and in the file. The same procedure will be followed in case the person who is in the office refuse[s] to cooperate ….

According to Plaintiff's proof of service, on August 16, 2016, the Fourth Chamber of General Business (Panama) declared by Resolution the Letter Rogatory issued by this Court valid and drafted a "Summons Decree", EDICT No. 147. *Doc. No. 63-1*. On August 22, 2016 at 10:00 am the General Secretary affixed EDICT No. 147 in a public, visible place, listing the expiration date as August 29, 2016. *Id*; *File No.493-16 at 148*. The process

11

server issued a report, signed September 9, 2016, indicating that after visiting the IGRA building on September 8, 2016, he was advised by the person present, Dr. Villarreal, that IGRA serves as the resident agent of Defendant but they "do not have legal representation." *Id*; *FileNo. 493 at 153*. Dr. Villarreal further advised the process server that the individual listed on the Letters Rogatory as the legal representative for service of process, Mrs Lillau de Muschett, was not a director for the company. The service processor completed the "Notification Form and Server's Report" indicating the information provided and attesting "after going to [IGRA], I personally notified [the Legal Representative of Angular Investments Corporation] of the [Summons Decree", EDICT No. 147] …. I can attest that a copy of the decree was delivered."

The Court finds that Defendant has not met its burden in showing that the manner of service failed to comply with Article 1009 of the Panamanian Judicial Code and therefore was improper. *See* S.*E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007). Nonetheless, the Court may only exercise personal jurisdiction to the limit allowed by the Due Process Clause. *Cal. Civ. Proc. Code* § 410.10

### c. Personal Jurisdiction

Generally, Plaintiff bears the burden of establishing personal jurisdiction. However, the Ninth Circuit, has shifted the burden in circumstances where the defendant is moving to set aside default. *Internet Sols.*, 509 F.3d at 1165 (9th Cir. 2007)(citing *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir.1988). Defendant argues the Court may not exercise either general or specific jurisdiction over Angular because it has not conducted business operations or otherwise had any presence in the United States, much less within California. Relying on Supreme Court and Ninth Circuit authority, *Burger King* and *Menken*, Defendant offers that none of Plaintiff's claims against Angular "arise out of or relate to" any activity which Angular has performed in California.

Plaintiff maintains that the Court may exercise specific jurisdiction over Angular because Angular committed intentional acts of inducement expressly aimed at Thunderbird in California. Plaintiff argues, based on the interpretation in *Calder,* and application in

12

*Dole*, that the purposeful availment requirement for specific jurisdiction is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Dole,* 303 F.3d at 1111 (citations omitted). Plaintiff alleges that Angular and Zimmer knew that Thunderbird's principal place of business was in San Diego, and that some of Thunderbird's officers, including its general counsel and at times its then CEO, Defendant Jack Mitchell, were located in San Diego. Therefore, Angular and Zimmer's conduct to induce Thunderbird's agreement to pay funds to Defendant Taloma Zulu were aimed at San Diego causing Plaintiff harm in California.

In reply, Defendant argues that Plaintiff's corporate office is not in California. Angular asserts, Plaintiff is a British Virgin Islands company headquartered in Panama with offices located in various Latin American countries, and with no business operations in the State of California or within the United States. Angular points to Plaintiff's 2016 Annual Report indicating that Plaintiff's corporate office is located in the Republic of Panama and two of its three directors live outside the United States. Angular also highlights the section of Plaintiff's Annual Report entitled "Service of Process and Enforcement of Liabilities" providing that because members of Plaintiff's Board of Directors are not residents of the United States it may be difficult for shareholders to effect service of process in the U.S. or to enforce judgments obtained in the United States.

In *Sinatra,* the Circuit Court found the exercise of jurisdiction over a non-resident corporation proper where "the [non-resident's] statements were expressly calculated to cause injury in California, the defendants knew the plaintiff would feel the injury in California, and the defendants expected to benefit directly from the statements." 854 F.2d 1191, 1198 (9th Cir. 1988) (citing *Cal. Software Inc*., 631 F. Supp. 1356, 1362 (C.D. Cal. 1986)). However, in *Bancroft & Masters, Inc. v. Augusta National, Inc.*, the Ninth Circuit clarified "that *Calder* cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." 223 F.3d

13

1082, 1087 (9th Cir. 2000) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). Specific jurisdiction requires that defendant's acts be directed or "expressly aimed" at the forum state or residents of the forum state. *See Bancroft & Masters*, 223 F.3d at 1087 (concluding that "express aiming encompasses wrongful conduct individually targeting a known forum resident."). The court found Plaintiff in *Bancroft* demonstrated "purposeful availment" because communication, by way of letter, was expressly aimed at California when the defendant individually targeted a California corporation doing business almost exclusively in California. *Id*. However, unlike the Plaintiffs in *Sinatra* and *Bancroft*, Thunderbird is not a resident California corporation, nor does it "do business almost exclusively in California." Yet, it alleges its principal place of business is within the forum state and Defendant knew Thunderbird would be harmed in California.

A corporation's principal place of business has been defined as its "nerve center"- "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (noting the belief that the "nerve center" will typically be found at a corporation's headquarters.) Under the "effects test," it must be foreseeable that the "brunt of the effects" of any inducement by Angular, caused sufficient harm that would be felt in C*alifornia. Cas. Assur. Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 599 (9th Cir. 1992); *see also Dole,* 303 F.3d at 1113. By submitting Plaintiff's 2016 Annual Report reflecting Thunderbird's Corporate Office in the Republic of Panama, Defendant has raised a material issue[3] on which the parties' affidavits conflict, weighing in favor of relief.

### d. Allegations of Angular's Wrongful Conduct

Angular argues that Plaintiff makes conclusory allegations for the first time in its opposition to Defendant's motion to dismiss that Zimmer and Angular are alter egos.

---

[3] Finding Defendant has presented a meritorious defense as to personal jurisdiction, the Court declines to address Plaintiff's conspiracy theory of jurisdiction.

14

1  Referencing ¶¶ 13-17 of Plaintiff's FAC, Angular contends that Plaintiff only makes
2  allegations against Defendant Zimmer and fails to allege that Angular was directly
3  involved in the diversion or received any of the allegedly diverted funds.

4  Plaintiff asserts personal knowledge that Zimmer is Angular's sole owner[4] and one
5  of its managers/officer via declaration of its CEO, Salomon Guggenheim. Plaintiff alleges
6  that Angular acted through Zimmer to induce Plaintiff. However, it is undisputed that
7  Zimmer held multiple titles and positions, including, Plaintiff's own "country manager,"
8  GTCR's president and a member of its board of directors, and Angular's principal.
9  Defendant raises material issues as to which entity - whether one or all - Zimmer's conduct
10 may be attributed.

### 3. Culpability

Angular asserts that any default was not willful, because it was never properly served and did not become aware of the suit until late December 2016. Angular sought to retain counsel, conferred with Plaintiff regarding setting aside default, and brought the instant motion in May of 2017. In response, Plaintiff submits the testimony of co-defendant Mitchell which indicates Zimmer and Mitchell have been working together on their defense in the instant action as early as November 2016. Plaintiff asserts that Angular sat on its rights and delayed filing this motion for almost six months. In light of the Court's finding that service was proper and reasonably calculated to give notice, and Angular's admission of knowledge of the suit as early as December 2016, the Court finds moderate culpability on the part of Defendant, weighing against relief. However, when a meritorious defense is presented and prejudice to the Plaintiff can be cured, Defendant's culpable conduct will not tip the scale. See *Brandt*, 653 F.3d at 1111.

---

[4] Plaintiff also submits a multibank resolution indicting "Jo Zimmer" as the sole owner of Utilataria Bursatil del Cono Sur, which is the sole owner of Angular. The document has no bearing on this Court's decision and therefore declines to rule on Defendant's objection to its submission.

15

## **CONCLUSION**

The Court finds that two of the three *Falk* factors weigh in favor of granting Defendant relief. All doubt as to Defendant's entitlement to relief is resolved in favor of the motion to set aside default so that the case may be decided on its merits. Accordingly, the Court finds good cause to set aside Clerk's entry of default [Doc. No. 67]. As to Defendant's motion to dismiss for lack of jurisdiction, the court cannot make a *prima facie* determination of jurisdiction given the state of the record before it. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant Angular's Motion to set aside Default or Default Judgment, if any, is **GRANTED.**
2. The parties shall appear before this Court on **May 29, 2018 at 2:30 p.m**. **in Courtroom 13B** for an evidentiary hearing on the material issues identified in this Court's order as it relates to personal jurisdiction.

**IT IS SO ORDERED.**

DATED: March 28, 2018

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE