UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUNDERBIRD RESORTS INC., a British Virgin Isles corporation<br><br>                Plaintiff,<br><br>v.<br><br>MURRAY JO ZIMMER, an individual; ANGULAR INVESTMENTS CORPORATION, a Panama corporation; MITZIM PROPERTIES, INC., a Nevada corporation; and TALOMA ZULU, S.A., a Panamanian corporation; JACK RAY MITCHELL, an individual,<br><br>                Defendants. | Case No.: 15cv1304 JAH (BGS)<br><br>**ORDER:**<br>**1. GRANTING DEFENDANT JACK MITCHELL'S MOTION TO COMPEL ARBITRATION [DOC. NO. 78]; AND**<br><br>**2. IN RE: DEFENDANT'S REQUEST TO DOMESTICATE AND ENTER ARBITRATION AWARD.** |

## INTRODUCTION

Currently pending before the Court is co-defendant Jack R. Mitchell's ("Mitchell") motion to compel arbitration and to stay action. The motion has been fully briefed. On October 9, 2017, in light of the Hong Kong ICC Arbitration Award ("Arbitration Award") dated September 26, 2017, Defendants Mitchell and Mitzim Properties, Inc. ("Mitzim") filed a Supplemental Brief [Doc. No 92] including Mitchell's declaration and exhibit,

requesting Thunderbird's First Amended Complaint ("FAC") be stayed as to Mitzim and Mitchell and the Arbitration Award be domesticated and entered against Plaintiff Thunderbird. Plaintiff filed a response in Opposition [Doc. No 94]. After careful consideration of the parties' submissions, and for the reasons set forth below, this Court **GRANTS** Defendant Jack Mitchell's Motion to Compel Arbitration, and finds Defendant's request to enter the September 26, 2017 Arbitration Award against Thunderbird premature.

## DISCUSSION

### 1. Motion to Compel Arbitration

Thunderbird and Mitchell entered into a settlement and termination of employment agreement ("Release Agreement" or "Settlement Agreement") including an Arbitration Clause (Clause 12.5) which required the parties to resolve by arbitration "any and all disputes, claims, controversies and differences" between the parties "arising out of this Release Agreement." *See* Doc. No. 78-2 at 12. It further outlines the "express[ ] intent of the parties" as follows:

> [T]hat any and all Disputes between and among the parties (including their officers, directors, shareholders, employees, elected officials, etc.) regardless of the nature thereof, which have not been resolved or cured by the parties *shall* be submitted to Arbitration under the applicable Rules and Procedures of the International Chamber of Commerce.

Doc. No. 78-2 at 12-13.

Mitchell argues that Plaintiff's claims fall "squarely within the scope of the arbitration provision," highlighting the Release Agreement's release and waiver provision: "THUNDERBIRD forever and fully releases and waives any and all claims, causes of action (contractual, criminal and/or tort), damages attorney's fees costs, liabilities or encumbrances of any kind it may now or in the future have against EMPLOYEE [Mitchell]." However, Thunderbird points to the last line of the same provision, which limits the application of the release to "all such matters existing *on or before the date first written above* [August 16, 2012]." Thunderbird contends that its claims are not covered

by the arbitration clause because they relate and/or arise from Mitchell's conduct *after* he signed the settlement and release agreement and up through and until at least October 17, 2014. In addition, Thunderbird argues that Mitchell's motion should be denied chiefly because there are nonarbitrable claims alleged against him, including a claim for RICO, associated with the conduct of Mitchell and the other co-defendant conspirators that occurred after August 16, 2012. Plaintiff asserts that these claims are not subject to arbitration, but rather must be adjudicated in the Southern District of California.

In deciding the arbitrability of the parties' disputes, the Supreme Court has outlined the District Courts' duties and set forth principles to which this Court is beholden. *See AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

> "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Whether a[n]… agreement creates a duty for the parties to arbitrate the particular grievance-is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court… in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. at 648-650.

The parties' pleadings present two questions:

(1) Whether Plaintiff's causes of action against Mitchell, relating to his conduct before and after August 16, 2012, are waived[1] under the Release and Waiver provision (Clause 3.2) of the Settlement Agreement; and

---

[1] In an abundance of caution, the Court addresses *sua sponte*, whether Thunderbird waived its right to arbitration of its counter-claims by declining to present them for arbitration before the ICC Tribunal in the first instance. The Court finds that Clause 13.2 of the Release agreement sufficiently protects the further exercise of Plaintiff's rights to arbitrate its claims despite delay.

3

(2) Whether the "subject matter" of Plaintiff's causes of action against Mitchell are "Disputes" which are subject to arbitration under the terms of Arbitration Clause (Clause 12.5) within the Settlement Agreement.

To determine "[w]hether a[n]… agreement creates a duty for the parties to arbitrate [a] particular grievance," the Court must interpret the Arbitration Clause within the Settlement Agreement, without delving into the merits of the parties' disputes. The Court's function is solely to decipher whether the parties intended to arbitrate each particular issue, claim, or grievance currently before it. The Court does so recognizing that the parties' Settlement Agreement (and therefore the Arbitration Clause) is "governed by and construed in accordance with the laws of the United Kingdom." Accordingly, the Court turns to the 1996 United Kingdom Arbitration Act for guidance.

Section 5 of the 1996 United Kingdom Arbitration Act requires a written arbitration agreement. *s.5*, *1996 Arbitration Act*. An arbitration agreement is defined as "an agreement to submit to arbitration present or future disputes (whether they are contractual or not)." *s.6, 1996 Arbitration Act*. The parties may decide to include *any and all* disputes arising between them or limit arbitration to one type of dispute or to disputes relating to the breach of one contract. The arbitration tribunal will apply the substantive law chosen by the parties or identified by the conflict of laws, pursuant to Section 46. *Id*. at *s.46*.

Some disputes, however, cannot be arbitrated due to public policy considerations. For example, arbitrators cannot make awards that are binding on third parties or affect the public at large. *Mustill & Boyd, Law and Practice of Commercial Arbitration in England* (2nd edition, 1999). The Court of Appeal in *Fulham Football Club (1987) Ltd v Richards* [2011] EWCA Civ 855 held that "[w]hen deciding whether a corporate dispute, i.e. the "subject matter," was arbitrable or not, the question to consider was whether the claim brought attracted "a degree of state intervention and public interest such as to make it inappropriate for disposal by anything other than judicial process." In general, arbitration is favored where the disputes: (1) fall within the terms of the arbitration agreement, (2) are

4

not prohibited by statutory restriction or rule of public policy that prevents the parties from agreeing to submit their disputes to arbitration, (3) are considered *internal* and do not effect third party rights or impinge on any statutory safeguards imposed for the benefits of third parties, and (4) the award is not outside of the Tribunals power. *Id.* (emphasis added). Lord Justice Patten, in delivering the judgment stated, "even where relief was sought which might have an effect on [third parties] who were not [a] party to the arbitration, I see no reason in principle why their views could not be canvassed by the arbitrators" before deciding the appropriate award.

Here, Plaintiff bring six causes of action against Defendant Mitchell, numbered in correspondence with Plaintiff's FAC: (1) Breach of Fiduciary Duty, (3) Fraud, (4) Civil RICO 18 U.S.C. § 1961 et seq., (5) Conversion (6) Constructive Trust, and (8) Breach of Contract. Based on a good faith belief that Mitchell's alleged conduct constituted a breach of the Release Agreement, Plaintiff ceased making severance payments as required under the agreement. In accordance with this belief, the last cause of action within Plaintiff's FAC is for Breach of Contract (i.e. Breach of the Settlement Agreement). Whether Mitchell's conduct breached the terms of the Settlement Agreement falls plainly within the scope of disputes the parties intended to submit to arbitration. Section 12.4 of the Settlement Agreement, entitled Resolution of Disputed Breach states, "if [a]… Party… maintains that an uncured breach of this Agreement exists, the disputed matter shall be subject exclusively to arbitration in Hong Kong in accordance with the terms and conditions of Section 12.5 (the Arbitration Clause)…" Therefore, the Court finds that Thunderbird's Eighth cause of action involves an "internal" dispute arising out of the Settlement Agreement which the parties expressly intended to arbitrate. Accordingly, the Court **GRANTS** Defendant's Motion to Compel Arbitration as to Plaintiff's Cause of Action for Breach of Contract.

The Court now determines whether the parties intended to arbitrate Plaintiff's remaining causes of action. In determining whether the remaining five causes of action are

subject to arbitration on the merits, the Court turns to the language of the Arbitration Clause, which defines "Dispute" as "any and all … claims, controversies and differences between or among the parties, arising out of the Release Agreement of any cause of action or claim." The cause of action within Plaintiff's FAC describe the same alleged conduct underpinning Plaintiff's Eighth Cause of Action for Breach of the Settlement Agreement. Additionally, the issues presented for determination within the FAC relate to conduct Plaintiff concedes began when Defendant Mitchell served as Plaintiff's CEO. Pursuant to the language of the Arbitration Clause, the Court finds that the parties intended to arbitrate all claims or controversies between or among the parties, *regardless of the nature thereof*, which arise out of the Settlement Agreement.

In opposition to the motion to Compel Arbitration, Plaintiff asserts the motion should be denied chiefly because the RICO claim is nonarbitrable and involves the conduct of other co-defendant conspirators that occurred after August 16, 2012. Although an arbitrator's decision on the RICO claim might have an effect on third parties, the Court of Appeal in *Fulham Football Club* has determined that such a contention is not sufficient to remove the matter from arbitration. A comment on the 2011 Court of Appeal case summarized the holding as follows:

> The court held that, even in cases where the necessary relief would go beyond what the arbitrators could grant or may affect third parties, such relief would not form part of the "matter" to be referred to arbitration. The limitations on what an arbitration can achieve do not dictate whether the subject matter of the dispute is arbitrable.

*PLC Arbitration, Case Report:* Court of Appeal upholds decision that unfair prejudice allegations may be arbitrable, 27-Jul-2011, England, Wales.)

The arbitrator may canvass the views of third parties potentially effected and consider any opposition before rendering an appropriate award. The Court therefore **GRANTS** Defendant's Motion to Compel Arbitration for the purpose of deciding the remaining five causes of action against Mitchell on the merits.

6

The Court must next determine whether the parties intended to arbitrate the issue of waiver. The question of whether the remaining five causes of action have been waived as to Mitchell under the Release and Waiver provision (Clause 3.2) of the Settlement Agreement is also a "dispute[], claim[], [or] controvers[y] between the parties *arising out of* th[e] Release [and Settlement] Agreement." The parties expressly agreed to arbitrate this issue. Therefore, it is for the arbitrator to decide which claims, or portions thereof, have or have not been waived, based on the alleged dates of Defendant's conduct. Accordingly, the Court **GRANTS** Defendant's Motion to Compel Arbitration whether Plaintiff waived its First, Third, Fourth, Fifth, and Sixth causes of action, or any portion thereof, against Mitchell upon execution of the Settlement Agreement.

### 2. Request to Domesticate and Enter Arbitration Award Against Plaintiff

On October 9, 2017, Mitchell submitted the "final" Hong Kong ICC Arbitration Award dated September 26, 2017, ruling against Plaintiff on all matters. Defendant lists ten issues raised by Plaintiff in the arbitration proceedings along with the ICC Tribunal's analysis and findings of fact on those issues. In doing so, Defendant offers that "no issues exist to be litigated" between Mitchell and Thunderbird because the arbitration has issued an award on all issues, "including the allegations in the above-captioned case." Doc. No. 92. Plaintiff filed a response in Opposition [Doc. No 94], moving to strike Mitchell's supplemental brief and motion to domesticate and enter an award on the grounds that it is (1) untimely, (2) procedurally improper, (3) premature pursuant to Rule 36(2) of the ICC Rules of Arbitration, and (4) suggests legal implications of *res judiciata* and/or collateral estoppel.

Section 9.49 of the Arbitration Award dated September 26, 2017 outlined the Tribunal's Findings, stating in pertinent part: "The Claimant [Mitchell] was not in breach of the Settlement Agreement." Although the findings are decisive on the issues raised by Plaintiff in its Eighth Cause of Action for Breach of Contract, the Tribunal made no

findings as to the issue of waiver. Not having Plaintiff's counterclaims before it[2], the Arbitrator declined to make findings as to the proper interpretation of the release and waiver clause in paragraph 3.2 of the Settlement Agreement, stating:

> By reason of the Tribunal's findings in paragraphs [9.46] and [9.48] that the Claimant has not breached clauses 5 and 6 of the Settlement Agreement and was not in breach of the Settlement Agreement (paragraph 9.49[1]), it does not need to make a finding as to the proper construction of the release in clause 3.2 of the Settlement Agreement as no issue of the Claimant being entitled to rely on Clause 3.2 of the Settlement Agreement arises.

Jack Ray Mitchell v. Thunderbird Resorts Inc., Int'l Ct. of Arb. of the Int'l. Chamber of Commerce, Case No. 21243/CYK/PTA, Ch. 9, ¶ 9.50 (2017) (Rooney, Arb.).

In light of this Court's order granting Defendant's Motion to Compel Arbitration as to the issue of waiver and all remaining claims Plaintiff chooses to pursue in arbitration, the Court finds Defendant Mitchell's request to domesticate and enter the Arbitration Award against Plaintiff premature. Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Mitchell's Motion to Compel Arbitration is **GRANTED.**

2. The action is **STAYED** as to Defendant Mitchell until such arbitration has been held in accordance with the terms of the agreement as set forth by this order.

3. The parties shall file a joint status report regarding the progression of Arbitration proceedings no later than **September 28, 2018.**

Dated: March 30, 2018

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

---

[2]The Court notes that Defendant Mitchell commenced arbitration as a Claimant before he was joined as a defendant in this action. Plaintiff initially reserved its right to assert all counterclaims in the event its request to stay the Arbitration was denied. In a letter dated November 20, 2015, Plaintiff's Counsel stated that Thunderbird would "not be pursuing the Counterclaim in this Arbitration."