UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUNDERBIRD RESORTS, INC., a British Virgin Isles Corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MURRAY JO ZIMMER, an individual; ANGULAR INVESTMENTS CORPORATION, a Panama corporation; MITZIM PROPERTIES, INC., a Nevada corporation; and TALOMA ZULU, S.A., a Panamanian corporation; JACK RAY MITCHELL, an individual,<br><br>　　　　　Defendants. | Case No.:  15cv1304-JAH (BGS)<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS JACK R. MITCHELL AND MITZIM PROPERTIES, INC. MOTION TO QUASH WRIT OF ATTACHMENT [DOC. NO. 107]** |

## INTRODUCTION

This matter comes before the Court on Defendants Jack R. Mitchell and Mitzim Properties, Inc. ("Defendants") motion to quash the prejudgment writ of attachment issued by this Court on September 21, 2015. *Doc. No.* 107. In addition Defendants request costs and attorney's fees pursuant to Cal, Civ. Proc. Code §490.020. After a careful review of the parties' submissions, and for the reasons set forth below, Defendant's Motion to Quash isDENIED.

1

## PROCEDURAL HISTORY AND SUMMARY OF ALLEGATIONS

On June 12, 2015, Thunderbird Resorts Inc., a British Virgin Isles corporation ("Plaintiff" or "Thunderbird") filed a Complaint against Defendants Murray Jo Zimmer ("Zimmer"), Angular Investments Corporation, a Panamanian corporation ("Angular"), Mitzim Properties, Inc. ("Mitzim") and Taloma Zulu, a Panamanian corporation, (collectively referred to as "Defendants") alleging seven causes of action including breach of fiduciary duty and fraud, a civil RICO claim under 18 U.S.C. § 1961, et seq against all defendants, a state tort action for conversion and equitable claims for constructive trust and accounting. *Doc. No. 1*. According to the Complaint, Thunderbird partnered with Defendant Angular, forming Grupo Thunderbird de Costa Rica, S.A. ("GTCR") to operate casinos and related businesses in Costa Rica. *Compl. ¶10*. Zimmer controlled and operated the business activities of Angular, oversaw the day-to-day operations of the partnership as president of GTCR, and acted as the "country manager" for Plaintiff's operations in Costa Rica. *Id*. Plaintiff and Defendant Angular agreed to split distributions from GTCR equally. *Id*.

Plaintiff alleges that between July 2007 and October 2014, Defendant Angular, by and through co-defendant Zimmer, convinced Plaintiff to authorize GTCR to pay over $2 million to co-defendant Taloma Zulu, under false pretenses. *Compl. ¶11*. Plaintiff contends it approved payment for legal and consulting expenses, but later learned that $550,000 of the monies paid to Taloma Zulu were re-directed to Zimmer in a matter of days, hundreds of thousands were paid to Zimmer's personal friends and other companies owned by Zimmer, and $107,975 was paid toward the purchase of an office building in Poway, California (the "Poway Property"). Plaintiff further alleges Defendant Mitzim[1] was the purchaser of the property. *Compl*. ¶14.

---

[1] In 2010, Mitzim Properties, Inc. was registered as a Nevada Corporation listing its President as Jack R. Mitchell and Director as Murray J. Zimmer. As of August 2011, Mitchell had a 50% ownership interest in Mitzim Properties, Inc. as evidenced by Mitchell's personal financial statement. *Doc. 24-8* at 2; Ex.12-002.

2

On June 26, 2015, Plaintiff filed an *ex parte* application for a writ of attachment against the Poway Property in the amount of $1,000,000 pursuant to California Code of Civil Procedure ("*Cal. Civ. Proc. Code*") section 483.010. *Doc. No. 3*. In its application, Plaintiff alleged that its "claim [ ] for money… is premised upon the express agreement with Angular to split distributions from GTCR on a 50/50 basis, as well as its agreement with Zimmer to act as Plaintiff's country manager in Costa Rica." *Doc. No.* 3-3 at 10. The motion for a writ also mentions a money claim under an "implied contract" theory on the basis that "implied contracts include quasi- contract claims where defendants have acquired the plaintiff's property through fraud or conversion, and refuse to return it." *Id*. After Plaintiff filed the required $10,000 undertaking pursuant to *Cal. Civ. Proc. Code* §§ 489.210 and 489.220, the Court issued a temporary protective order pending a hearing on Plaintiff's motion. *Doc. No. 11*. Mitzim filed a response in opposition to Plaintiff's application for a writ of attachment and Plaintiff filed a reply. *Doc. Nos.* 19, 24.

On September 11, 2015, Plaintiff filed its First Amended Complaint ("FAC") adding an eighth claim for breach of contract and joining Defendant Jack R. Mitchell, former CEO of Thunderbird and President of Mitzim[2]. See *Doc. No. 28*. The FAC alleges that Zimmer, Angular and Mitchell breached their respective fiduciary duties by committing fraud against Thunderbird. The Complaint further alleges and Taloma Zulu and Mitzim Properties were aware that this fraud was being committed against Thunderbird and conspired to commit fraud and/or aided and abetted in that fraud." *Id* at 7, ¶ 34. In support of its claim against Mitzim, Thunderbird contends that "Mitzim Properties knew that Zimmer and Angular planned to and did divert, misappropriate, and/or embezzle funds and provided substantial assistance and/or encouragement to Zimmer and Angular with their scheme to harm Thunderbird" and "as a ….result of …. Mitzim Properties' actions, Thunderbird suffered damages." *Doc. No. 28* at 6, ¶¶ 27, 28. In its fourth claim for relief,

---

[2] Mitchell commenced arbitration as a claimant against Thunderbird for breach of a Settlement and Termination of Employment Agreement ("Settlement Agreement") prior to being joined as a defendant in this action.

3

Plaintiff asserts "Zimmer, Angular, Taloma Zulu, Mitzim Properties and Mitchell formed an enterprise and devised a scheme for a common purpose and with the intent to divert, misappropriate, and/or embezzle funds from Thunderbird without knowledge or consent, which lasted over a half-decade." *Id*. at 8, ¶ 38

Plaintiff's motion for right to attach and for an order issuing a writ of attachment was heard on September 14, 2015. Finding that Plaintiff's claims satisfied *Cal. Civ. Proc. Code* sections 484.090 and 483.010, the Court granted Plaintiff's application (*see doc. no.* 31) and issued the writ of attachment. *Doc. No.* 35.

On September 26, 2017, at the conclusion of arbitration proceedings between Mitchell and Thunderbird Resorts Inc. for breach of the employment settlement agreement, the International Court of Arbitration of the International Chamber of Commerce ("ICC") issued a Final Award with factual findings. *Doc. No. 92-1, at 4; Jack Ray Mitchell v. Thunderbird Resorts Inc.*, Int'l Ct. of Arb. of the Int'l. Chamber of Commerce, Case No. 21243/CYK/PTA, Ch. 9, ¶ 9.50 (2017) (Rooney, Arb.). Following the issuance of the Award in Mitchell's favor, Defendants Mitchell and Mitzim filed the instant motion to quash the writ of attachment. *Doc. No.* 107 at 1. Plaintiff filed an opposition to the motion and Defendants filed a reply. *Doc. Nos*. 110,113. The parties appeared before this Court for a hearing on the motion, after which the Court took the matter under submission.

## DISCUSSION

### I. LEGAL STANDARD

A plaintiff in federal court may utilize remedies provided under the law of the state in which the federal court sits to secure satisfaction of a potential judgment by seizing property. Fed.R.Civ.P. 64; *Reebok Int'l, Ltd. v. Marnatech Enters., Inc*., 970 F.2d 552, 558 (9th Cir.1992). In determining whether a plaintiff is entitled to a right to attach order, a federal court applies the substantive law of the state. *See Suzuki Motor of Am., Inc. v. Mullion,* No. SACV1700903CJCJDEX, 2017 WL 7410992, at *2 (C.D. Cal. Aug. 15, 2017). Under California law, a "defendant whose property has been attached pursuant to a writ issued … may apply for an order (1) that the right to attach order be set aside, the

writ of attachment quashed, and any property levied upon pursuant to the writ be released…" *Cal. Civ. Proc. Code* § 485.240; *W. Steel & Ship Repair, Inc. v. RMI, Inc.,* 176 Cal. App. 3d 1108, 1113 (Ct. App. 1986) (a motion to quash is the mechanism for challenging the validity of the attachment). The motion must state the grounds upon which it is based and "shall be accompanied by an affidavit supporting any factual issues raised and points and authorities supporting any legal issues raised." Cal. Civ. Proc. Code § 485.240(b). Although brought by the defendant debtor, the creditor maintains the burden of proof in establishing the validity of the attachment. *Id*. at 1115 (citing *Loeb & Loeb v. Beverly Glen Music, Inc*., 166 Cal. App. 3d 1110, 1116 (Ct. App. 1985) (plaintiff carries the same burden under section 485.240 as under section 484.090)). The Court determines whether the plaintiff is entitled to the right to attach order based on the pleadings and other papers in the record, but may receive and consider additional evidence and additional points and authorities. Cal. Civ. Proc. Code § 485.240 (c), (d). "[I]n determining the right to an attachment all of the facts set forth in the record before us must be considered, and that conclusions of law set forth in the affidavit used to secure the writ of attachment contrary to the pleaded facts in other pleadings will be disregarded." *Weaver v. Superior Court*, 93 Cal. App. 2d 729, 732 (1949).

**II. ANALYSIS**

**A. Claim for Money based upon Express or Implied Contract**

Section 483.010 (a) permits the issuance of a writ of attachment only "in an action on a claim…for money …based upon a contract, express or implied where the total amount of the claim or claims is fixed or readily ascertainable..." *Cal. Civ. Proc. Code* § 483.010.

1. <u>Mitchell and Thunderbird's Settlement Agreement</u>

Defendants argue that Thunderbird no longer has a contract claim against Mitchell in light of the issuance of a final award in his favor following arbitration proceedings between Mitchell and Thunderbird. In response, Plaintiff argues that Thunderbird's motion for a writ of attachment was based on express agreements with Angular and Zimmer - not Mitchell. In issuing the writ, the Court found "Plaintiff's claim is for …. money premised

5

15cv1304-JAH (BGS)

upon the express agreement with Angular to split distributions from GTCR on a 50/50 basis, as well as [its] agreement with Zimmer to act as Plaintiff's country manager in Costa Rica." *See Rptr's Trns. of Motion for Writ of Attachment* at 17, Thunderbird Resorts Inc., v. Mitzim Properties, Inc. et. al. No. 15cv1304 (S.D. Cal. Sep 14, 2015), Doc. No. 30. The Settlement and Termination of Employment Agreement between Mitchell and Thunderbird was not the contractual agreement upon which the issuance of the writ was based. Further, the writ of attachment did not issue against real property directly owned by defendant Mitchell. Instead, it issued against real property owned by corporate defendant Mitzim, an entity whose interests were not represented in arbitration proceedings.

2. <u>Waiver of Right to Challenge Issuance</u>

For the first time in its motion to quash the writ of attachment, Defendants argue that even if express contracts existed between Plaintiff and Angular, and Plaintiff and Zimmer, no contractual claim exists with respect to Mitzim. Plaintiff contends that Mitzim's failure to raise this issue in its opposition to Thunderbird's original application is equivalent to an admission that the first element of section 484.090 was satisfied[3] – i.e. that the claim upon which the attachment is based is one upon which an attachment may be issued. Therefore, it is Plaintiff's position that Mitzim waived the right to challenge whether Plaintiff's claim meets the requirements of §483.010(a).

A pre-judgment writ of attachment is an extraordinary measure that may only issue if it complies with statutory requirements. *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., Div. of Goodyear Tire & Rubber Co.*, 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000) (citing *Jordan–Lyon Productions, Ltd. v. Cineplex Odeon Corp.*, 29 Cal.App.4th 1459, 1466 (1994)). Upon a motion to quash or vacate the attachment prior to judgment, the court

---

[3] Section 484.090(a) requires issuance of a writ only where (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than recovery of the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero,

6

must determine "whether there was 'sufficient cause to allow the writ' or 'other good cause' shown entitling the defendant to the discharge of the writ." *Anvil Gold Mining Co v. Hoxsie*, 125 F. 724, 728 (9th Cir. 1903). *See also Burke v. Superior Court of Sacramento Cty.*, 71 Cal. 2d 276, 279 (1969) (grounds for a motion to discharge attachment may include the fact that case is not one in which attachment may properly issue.) Compliance with the statutory requirements is not subject to waiver. The Court now determines whether "the claim upon which the attachment is based is one upon which an attachment may be issued."

3. Implied Contractual Claim Against Mitzim

Defendants allege generally that Thunderbird no longer satisfies any of the requirements of section 484.090[4], and specifically that "there is no contract with Mitchell or Mitzim which would allow attachment of Mitzim or Mitchell property." The subject of the writ is real property legally owned by Defendant Mitzim Properties, Inc. Defendants therefore raise the question whether the complaint states a cause of action in contract against Mitzim.

Relying on two California appellate court cases, *Arcturus Mfg. Corp. v. Rork*, 198 Cal.App.2d 208 (Cal. 1961) and *Klein v. Benaron*, 247 Cal.App.2d 607, 610 (Cal. 1967), Plaintiff asserts that an "attachment may issue upon contracts and quasi-contract claims where a defendant acquired the plaintiff's property through fraud or conversion." *Doc. No.* 110 at 10. In *Arcturus Mfg. Corp,* defendant Rork, while an employee, director, officer and general manager of plaintiff, designated certain third parties to do work for plaintiff. As part of a plan and scheme to cheat and defraud plaintiff, Rork received secret profits and kickbacks from the payments made by plaintiff to third-parties. The court held,

> The gist of this action as pleaded is in quasi contract to recover property belonging to plaintiff. While fraud may be involved, and undoubtedly there is a breach of fiduciary obligation alleged, the gravamen of the complaint is to recover against the defendant agent on the *promise implied by law to pay to the plaintiff principal the specific secret profits and kickbacks received*. (emphasis added).

---

[4] See note 3.

7

*Arcturus Mfg. Corp.*, 198 Cal. App. 2d at 210. The court in *Arcturus Mfg. Corp* summarizes several cases all holding that issuance of an attachment is proper where the action has been brought upon a promise implied in law. 198 Cal. App. 2d at 211 -215; see also *Los Angeles Drug Co. v. Superior Court in & for Los Angeles Cty.*, 8 Cal. 2d 71, 75 (1936) (the validity of a writ of attachment rests upon a promise implied by law universally recognized). "The action in assumpsit in such cases is not upon … the fraud practiced but upon the promise or obligation set up by the law to afford the injured party additional relief." *Arcturus Mfg. Corp* 198 Cal. App. 2d at 211. Had Plaintiff's application for a writ targeted the personal or real property of Angular, Zimmer or Mitchell - or their respective legal interest, if any, in Mitzim Properties, Inc., - the writ would undoubtedly be based upon a contract implied by law.

Here the Poway Property targeted by the writ is owned by Mitzim. Plaintiff does not allege a claim for monies owed due to an express contract with Mitzim, nor does it allege that Mitzim owed it a fiduciary duty, but instead, Plaintiff proceeds on a theory that Mitzim is liable for aiding and abetting the breach of a duty owed by Zimmer and Angular. Under California law, there are two separate theories under which one may be liable for aiding and abetting a breach of fiduciary duty. *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1477, (2014), as modified (May 27, 2014). One theory, akin to conspiracy, requires the aider and abettor owe a fiduciary duty to the victim, while the other is based on the commission of an independent tort, without regard to a duty owed. *Id.* at 1477. As in *Am. Master Lease LLC*, Plaintiff proceeds on the second theory of aiding and abetting liability alleging that Mitzim had knowledge of the scheme, provided Angular and Zimmer with substantial assistance in breaching their duties, and was unjustly enriched at Plaintiff's expense. Under this theory of liability, the remedy is disgorgement of profits. *Id.* at 1482 (if enrichment of the defendant would be unjust, the defendant may be under a duty to give to the plaintiff the amount by which the defendant has been enriched.) A quasi-contract claim is therefore essentially alleged when a defendant has knowingly accepted a benefit "under circumstances that make it inequitable for the defendant to retain

8

the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009), as modified (Dec. 28, 2009); *see also McKell v. Washington Mutual, Inc.* 142 Cal.App.4th 1457, 1490 (2006) ("unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust"); *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal.App.4th 333, 346 (2008) (Dintino) ("unjust enrichment is a common law obligation implied by law based on the equities of a particular case," requiring the individual who is unjustly enriched to make restitution).

Similarly, the court in *Philpott v. Superior Court in & for Los Angeles Cty.,* found that an action for a sum certain, that lacks the element of an express promise to pay, is "an action in which the law, in order to prevent the unjust enrichment of defendants from the property of plaintiff, itself implies a promise to repay the sum demanded." 1 Cal. 2d 512, 518 (1934) ("a cause of action, which although originally sounding in tort, has now become fully *ex contractu* by a process of slow but steady development.").

Despite the harm complained of as a result of alleged violations of the RICO statute, fraud, and breach of fiduciary duty, the gravamen of Plaintiff's action against Mitzim specifically, and Defendants generally, is in quasi-contract to recover monies belonging to Plaintiff, which the law implies a promise to pay. Accordingly, the Court finds that Plaintiff's action against Mitzim is on a claim for money based upon an implied contract.

### B. Abuse of Process

The Court must find that the writ attachment was not sought for a purpose other than recovery of the claim upon which the attachment is based. *Cal. Civ. Proc. Code* § 484.090(a). Defendants assert that the writ seeks to coerce Ana Hincapie, the sole owner of Mitzim, into paying all or part of Thunderbird's claims against the defendants. Defendants argue that Thunderbird knew or should have known that it was not entitled to a writ attaching Mitzim's real property or proceeds from the sale of that real property. In response, Plaintiff points to Mitchell's testimony in the ICC Arbitration that Mitchell had a "gentleman's agreement" with Zimmer to split profits from Mitzim 50/50 based on each of their contributions to the purchase of the Poway property in Mitzim's name. *Doc. No.*

9

110 at 11; *see also Doc. No.* 103-12; Ex: 8 at 116-117 (ICC arbitration transcript). Plaintiff contends that Defendants have not plead facts to support the essential elements for an abuse of process claim and points to the Court's express finding that there was no other purpose for the attachment but to secure recovery on the claim.

The Court agrees. Defendants' motion does not state sufficient facts nor does it offer any law from which the Court may find that Plaintiff has abused the process of the court or used such process for an ulterior motive. Accordingly, Defendants' motion to quash the writ on such basis is DENIED.

## **CONCLUSION**

The Court finds that the gravamen of Plaintiff's action is in quasi-contract or assumpsit to recover money belonging to Plaintiff - not upon the fraud practiced, but upon the promise implied by law to pay back funds received as a result of unjust enrichment. Based on the foregoing,

**IT IS HEREBY ORDERED:**

1. Defendants' Jack R. Mitchell and Mitzim Properties, Inc. motion to quash the writ of attachment is **DENIED.**
2. Defendants' request for costs and attorney's fees pursuant to Cal, Civ. Proc. Code §490.020 is **DENIED**.

**IT IS SO ORDERED.**

DATED: September 28, 2018

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE